IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **RALPH PAUL WEAVER, d/b/a** <br> **GUNS & AMMO** | **PLAINTIFF** |
| v. | CAUSE NO. 1:10cv574 LG-RHW |
| **JILLAIR HARRIS, Director of** <br> **Industry Operations, Bureau of** <br> **Alcohol, Tobacco, Firearms and** <br> **Explosives** | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER
GRANTING SUMMARY JUDGMENT IN FAVOR
OF DEFENDANT AND DISMISSING CASE**

BEFORE THE COURT are cross-motions for summary judgment filed by Plaintiff Ralph Paul Weaver [41] and Defendant the Director of Industry Operations for the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") [18]. After due consideration of the submissions, the record in this case, and the relevant law, it is the Court's opinion that summary judgment should be entered in favor of the Defendant. Accordingly, Plaintiff's Motion will be denied, and Defendant's Motion will be granted. Additionally, Plaintiff's motion to strike portions of Defendant's memorandum [53, 55] will be denied.

FACTS AND PROCEDURAL HISTORY

Plaintiff Ralph Weaver has operated a retail gun shop for approximately forty years. He has been licensed to sell firearms by the Bureau of Alcohol, Tobacco, Firearms and Explosives since sometime in the 1960's. He began selling out of his home, and moved into a retail location after an ATF inspection in 1993. Operating

as Guns and Ammo, Weaver now sells approximately 1500 guns a year, which the ATF considers a high-volume business.

ATF inspected Weaver's operations in 1998 and cited him for, among other things, record keeping errors which were violations of the Gun Control Act. There was no further action taken on the violations. He was inspected again in 2009. The ATF agent reviewed a year's worth of records and noted certain violations, such as missing guns and/or transaction records, and guns sold to unauthorized persons. A warning conference was held on January 11, 2010, which the ATF memorialized in a letter to Weaver. The letter stated: "You are reminded that future violations, repeat or otherwise, could be viewed as willful and may result in the revocation of your license. You may anticipate further inspections to ensure your compliance." (Pl. Mot. Summ. J. Ex. G, ECF No. 50-1). Weaver received an initial Notice of Revocation of License two months later, on March 10, 2010. (Pl. Mot. Summ. J. Ex. H, ECF No. 50-2).

After a hearing to review the initial Notice of Revocation of License, the Hearing Officer concluded that Weaver had violated three provisions of Title 18, Chapter 44. First, he failed to timely record the disposition of 213 firearms in his Acquisitions and Dispositions book (the "A & D book"). Second, he transferred firearms to unlicensed non-Mississippi residents. Finally, he transferred firearms to unlicensed individuals without conducting the required background check. (Def.

Mot. Summ J. Ex. B, Pt. 1 at 18, 19, ECF No. 20-1).[1]  Significantly, these violations were found to be willful.  The Hearing Officer recommended to the Director of Industry Operations (DIO) that Weaver's license not be revoked.  (*Id*. at 21).  However, the DIO did not adopt the recommendation of the Hearing Officer.  Instead, he found the willful violations of the Gun Control Act justified revocation of Weaver's firearms license. (Def. Mot. Summ. J. Ex. C at 5, ECF No. 18-5).

Weaver seeks judicial review of this decision.  The government has filed a summary judgment motion contending there is no question of material fact whether the government revoked Weaver's license only after having made the necessary findings.  Weaver filed a cross-motion for summary judgment arguing that the ATF's determination was both unsupported by the evidence and contrary to established case law, as well as contrary to ATF's own revocation policies and guidelines.

THE STANDARD OF REVIEW

The Gun Control Act of 1968 requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of the Treasury.  *United States v. Shirling*, 572 F.2d 532, 533 (5th Cir. 1978); 18 U.S.C. § 923(a).  Under the GCA, "[t]he Attorney General may, after notice and opportunity for hearing, revoke any license issued under [18

---

[1] The Hearing Officer found that the government had failed to prove a fourth allegation: that Weaver had not completed ATF Forms 4473 for the transfer of firearms.

U.S.C. § 923] if the holder of such license has willfully violated a provision of [the GCA] or any rule or regulation prescribed by the Attorney General under [the GCA]...." 18 U.S.C. § 923(e).  Section 923(f)(3) confers jurisdiction on this Court to review the revocation of a license, de novo.  "In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing." *Id.*

The de novo standard of review "means that the ATF's decision is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision." *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004).  The Attorney General's decision may be upheld if the court concludes, in its own judgment, that the evidence supporting the Attorney General's decision regarding willfulness is substantial.  *See Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980).

The Court may grant summary judgment in an appeal from an ATF administrative decision when there are no issues of material fact in dispute. *Willingham Sports, Inc.*, 348 F. Supp. 2d at 1307; *Armalite, Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008); *see also On Target Sporting Goods, Inc. v. Attorney General of the United States*, 472 F.3d 572, 575 (8th Cir. 2007) (allowing summary judgment for de novo review of ATF's refusal to approve a license under 18 U.S.C. § 923(d)(1)(C)).

The standard of review is limited. Whether the Attorney General's decision was "authorized," Section 923(f)(3) "does not call upon this Court to decide whether it would revoke the license in its own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license." *Morgan v. U.S. Dep't of Justice,* 473 F. Supp. 2d 756, 762 (E.D. Mich. 2007) (quoting *Pinion Enters., Inc. v. Ashcroft,* 371 F. Supp. 2d 1311, 1315 (N.D. Ala. 2005)); *see also Armalite, Inc.,* 544 F.3d at 650; *Article II Gun Shop, Inc. v. Gonzalez,* 441 F.3d 492, 494 (7th Cir. 2006).

A license holder commits a willful violation of the Gun Control Act when, "with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e., recklessly violates them)." *Armalite, Inc.*, 544 F.3d at 647. "[A] dealer's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference." *Willingham Sports Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 415 F.3d 1274, 1277 (11th Cir. 2005); *see also Athens Pawn Shop Inc. v. Bennett*, 364 F. App'x 58, 60 (5th Cir. 2010). There is no requirement that the violations occurred with any bad purpose. *On Target Sporting Goods, Inc.*, 472 F.3d at 575.

## DISCUSSION

To establish that the ATF's revocation of Weaver's license was authorized by law for purposes of summary judgment, the ATF must demonstrate that the

undisputed facts establish that Weaver was aware of his obligations under the GCA and that he either "purposefully disregarded" or was "plainly indifferent" to those obligations. By the statute's plain language, even a single willful violation can trigger ATF's power of revocation. *See Am. Arms Int'l v. Herbert*, 563 F.3d 78, 86 (4th Cir. 2009); *General Store, Inc. v. Van Loan*, 560 F.3d 920, 924 (9th Cir. 2009); *Armalite, Inc.*, 544 F.3d at 647; *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d at 498.

**1. Whether Weaver's Violations of the Gun Control Act were "Willful"**

Weaver has never disputed that he made the errors alleged by the government. Rather, he contends he did not "willfully" violate the underlying regulations, as required by 18 U.S.C. § 923(e).

The Court analyzes the A & D book violations, as that category comprises the vast majority of Weaver's violations. Weaver is required to log acquisitions and dispositions of firearms in his A & D book in accordance with 18 U.S.C. § 923's licensing provisions. A seven-day delay in making an entry of a sale or other disposition into the A & D book is allowed. 27 C.F.R. § 478.125(e). At the conclusion of the ATF's ten-day inspection, and after seeking Weaver's assistance in reconciling the records, the Agent found that Weaver failed to timely record disposition of 213 firearms. This was not the first time the ATF had discovered this error; Weaver had also been cited for A & D book violations during his inspection in 1998. (Def. Mot. Summ. J. Ex. A Pt. 3, 179:16-22, ECF No. 18-3). At that time, seven firearms were not accounted for. Thus, Weaver's A & D book violations

increased dramatically between 1998 and 2009.  (*Id*. at 179:21).

Weaver argues he has located 75% of the missing firearms, and expects to eventually find "most, if not all" of them.  (Pl. Mem. 7, ECF No. 45).  However, "after-the-fact efforts to correct the specific violations 'are irrelevant to the issue of willfulness at the time the errors occurred.'" *Suydam v. United States Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:11-cv-00055-JAW, 2012 WL 589519, at *8 (D. Me. Feb. 22, 2012) (quoting *Sturdy v. Bentsen*, 129 F.3d 122, at *2 (8th Cir.1997) (unpublished table decision)).  Further, although Weaver argues that his violations were minor or honest errors and can be cured, "the GCA does not provide a dispensation for 'minor' errors." *Gun Shop LLC v. United States Dept. of Justice*, No. 4:10CV01459MLM, 2011 WL 2214671, at * 10 (E.D. Mo. June 3, 2011).  The statute requires only a violation of any rule or regulation for revocation. *Armalite, Inc.*, 544 F.3d at 647; 18 U.S.C. § 923(e).  As a result, "[t]he revocation provision applies regardless of whether a firearms dealer's failure to comply with the Act actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold." *Article II Gun Shop*, 441 F.3d at 498.

The Court also rejects Weaver's attempt to lay blame for his errors at the feet of the ATF.  He claims deficiencies in the inspection program allowed his inadequate record keeping methods to remain undetected.  "During the [eleven] years that ATF had not been by to inspect, educate and assist Weaver, his inventory procedures admittedly slipped from what they should have been and he had an

unacceptable number of sales that had not been logged out." (Pl. Mem. 6, ECF No. 45). Compliance with the GCA is the licensee's responsibility. "[A] federal firearms licensee . . . [has] a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco, and Firearms and to follow those mandates." *Trader Vic's Ltd v. O'Neill*, 169 F. Supp. 2d 957, 960 (N.D. Ind. 2001). Weaver had been warned about this specific violation in the past. It was not a lack of inspections that caused him to continue to violate the GCA.

A few inadvertent errors in failing to record transactions may not amount to "willful" failures, even when the legal requirement to record the transactions was known. But repeated violation of known legal requirements is sufficient to establish willfulness. *Athens Pawn Shop Inc.*, 364 F. App'x at 60. Weaver's failure to keep track of his disposition of firearms was brought to his attention in 1998. He was knowledgeable about the record keeping requirements of the GCA. Nevertheless, he had lost track of many more firearms by 2009. Under these circumstances, the Court has no difficulty concluding that Weaver's record keeping errors were willful.

## 2. Whether ATF Abused its Authority in Revoking Weaver's License

Weaver objects to the manner in which his license was revoked. He notes that the Inspector and the first DIO concluded that his license should not be revoked. They both believed the appropriate action was continuing to monitor inventory reconciliation, remedial counseling, and a recall inspection. (Pl. Mot. Summ. J. Ex. F 19-20, ECF No. 41-5). As noted earlier, this action was actually

taken, and an admonitory letter went out to Weaver.  It was a second DIO who shortly thereafter changed course and initiated revocation proceedings.[2]

Weaver argues that the ATF did not follow its internal policy when it first admonished him, and then sought to revoke his license.  He presents an affidavit from James Zammillo, who was previously employed as Deputy Assistant Director fo Field Operations for industry operations.  (Pl. Mot. Summ. J. Ex. B, ECF No. 41-2).  Zammillo disagrees with the finding of willfulness and the decision to revoke.  (*Id.* (¶ 10, 11)).  However, the selection of the penalty for a violation is a matter within the discretion of the ATF.  *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004) ; *see also Stein's, Inc.*, 649 F.2d at 464-65 n. 2.  This case is unusual because the ATF exercised its discretion to both admonish Weaver *and* initiate revocation proceedings after a single inspection in 2009.  The Court has not been able to locate another case where this same series of events occurred.  Zammillo states the ATF violated its own policies and procedures by revoking Weaver's license in this way.  (Pl. Mot. Summ. J. Ex. B 5 (¶ 17)).  Nevertheless, there appears to be no legal reason why the ATF is limited in its ability to initiate revocation proceedings in the face of a violation.  The pertinent regulation provides that "[w]henever the Director has reason to believe that a licensee has willfully violated any provision of the Act or this part, a notice of revocation of the license, ATF Form 4500, may be issued."  27 CFR § 478.73.

---

[2] These ATF officials agreed that Weaver's violations were willful; they disagreed only as to the appropriate consequence.

Because the Court's review is limited to whether the ATF's actions were "authorized", the evidence regarding how another official would have exercised the ATF's discretion under these circumstances is not helpful.

Furthermore, admonishing a licensee about his responsibilities might be appropriate even when the ATF intends to revoke a license, "both so he could correct some or all of the existing improprieties, and so he would comply with record-keeping procedures in the future." *Cisewski*, 773 F. Supp. at 152 -153.  In the Court's view, the internal inconsistencies within the ATF that is apparent from the record in this case do not create a question of material fact regarding whether the revocation was authorized.  *See KY Imports, Inc. v. United States*, No. 3:05cv23-R, 2006 WL 3043420, at *5 (W.D. Ky. Oct. 24, 2006).

Weaver also makes an estoppel argument.  He believed he had a year to come into compliance after receiving the admonitory letter, although he stated at the hearing that no one at the ATF actually communicated this to him.  He argues the ATF should not be able to pursue revocation after sending him the admonitory letter, because he had no opportunity to make improvements.  This type of "second chance" estoppel argument has been rejected by other courts.  *See, e.g., Breit & Johnson Sporting Goods, Inc.*, 320 F. Supp. 2d at 680 (rejecting equitable estoppel argument because the licensee had knowledge of the requirements and could not demonstrate that ATF had misled it); *Francis v. United States Bureau of Alcohol, Tobacco & Firearms*, No. CIV-05-380-RAW, 2006 WL 1047026, at *4 (E.D. Okla.

Apr. 20, 2006).  Accordingly, Weaver's equitable estoppel argument cannot create a question of material fact for summary judgment purposes.

**3.  Weaver's Objection and Motion to Strike Memorandums**

In his Objection and Motion to Strike [53, 55], Weaver seeks to strike inadmissible portions of the Respondent's memorandum brief opposing Weaver's summary judgment motion and in support of Respondent's own summary judgment motion.  Weaver contends certain statements are not supported by evidence in the record and should not be relied upon by the Court.  The Court agrees that Respondent's memorandums are argument, and do not establish facts for summary judgment purposes.  The Court does not construe Respondent's memorandums as summary judgment evidence.  However, although it is improper to accord evidentiary value to the statements therein, the Court does not find it necessary or appropriate to strike any portion of the memorandum.  The relief requested will therefore be denied.

## Conclusion

The revocation of Plaintiff's firearms license may appear a harsh result.  However, the Court is not permitted to decide whether, in it's own judgment, it would revoke Plaintiff's license.  The question here is limited to whether the Attorney General's decision was "authorized"– that is whether all of the evidence presented is sufficient to justify the revocation of the license.  For all of the reasons stated above, the Court finds the evidence presented is sufficient to justify revocation and that the Attorney General was authorized to revoke Weaver's

-11-

firearms license based on his willful violations of the Gun Control Act.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Plaintiff's Cross Motion [41] for Summary Judgment is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Plaintiff's Objection and Motion to Strike [53, 55] is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Defendant's Motion [18] for Summary Judgment is **GRANTED**.  Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 12th day of March, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE